U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY (Louisville)

| | |
|---|---|
| **Charles L. Thomason,**<br>　　Plaintiff,<br>v.<br><br>**Joseph R. Dreitler,**<br>**Paul W. Reidl, and**<br>**Jenifer deWolf (Paine),**<br>　　Defendants. | 3:19-cv-0 930-GNS |

## COMPLAINT FOR DEFAMATION

The plaintiff alleges and states the following Complaint against the defendants, and each of them, and pleads, for the "injury done him in his ... reputation," the plaintiff seeks "remedy by due course of law, and right and justice administered without sale, denial or delay," (§14 Constitution of Kentucky), based on the following:

1.　　The plaintiff is a citizen of the Commonwealth of Kentucky and a resident of Jefferson County, Kentucky.  Plaintiff is a private individual and not a public figure.

2.　　Defendants are not citizens or residents of Kentucky, and the plaintiff invokes the diversity jurisdiction of this Court, pursuant to 28 U.S.C. §1332.  The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

3.　　Upon information and belief, defendant Joseph R. Dreitler is a citizen and resident of the State of Ohio, who maintains an office in Franklin County, Ohio.

4.　　Upon information and belief, defendant Gary W. Reidl is a citizen and resident of the State of California, who maintains an office in Half Moon Bay, San Mateo County, California.

5. Upon information and belief, defendant Jenifer deWolf (Paine) is a citizen and resident of the State of New York, who maintains an office in New York, NY.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the defendants because their tortious acts of publishing within this Commonwealth defamatory statements which caused injury in Kentucky to the plaintiff, who is and was at the time of the actions alleged here a resident of Kentucky. This Court has personal jurisdiction over the defendants pursuant to KRS § 454.210(2)(a), subsections (3), and (4). The defendants' torts alleged herein occurs wherever the offending material is circulated, according to *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984).

7. Each defendant's tortious acts gave rise to defamation claims based upon the same common nucleus of operative fact, and upon each defendants' volitional contacts with readers in Kentucky of the defamatory comments that defendants published to those and other readers. Each defendant purposely availed themselves of the benefit of using an online publication knowing that their comments would reach readers in Kentucky, and elsewhere, connected to the stream of internet commerce and ideas. The defendants, and each of them, should have forseen having to answer for their defamatory comments, directed at plaintiff, in the jurisdiction where those comments caused injury and where the plaintiff resides, and works.

8. Venue in this district is proper under 28 U.S.C. 1391(b) in that a substantial portion of the actions and harms occurred here. The forum state has an interest in adjudicating the matter and applying its laws against defamation and defamation *per se*. This forum will provide the most efficient resolution of the issues of local law.

9. Venue in the vicinage of this federal court is proper, as well as proper in Jefferson County, Kentucky, pursuant to KRS § 452.460 and KRS § 454.210(4).

## FACTUAL BACKGROUND

10. In an adminstrative proceeding before the Trademark Trial and Appeal Board of the United States Patent and Trademark Office (hereinafter the "TTAB"), the Plaintiff was counsel of record for Corcamore LLC, defending it against an action to cancel its trademark registration (hereinafter the "Cancellation Action"), pleaded by SFM LLC under 15 U.S.C. §1064 (§14 of the Lanham Act).

11. At the outset of the Cancellation Action, a motion on behalf of Corcamore challenged the "statutory standing" of SFM LLC to plead for cancellation of the trademark registration. That motion was based on the then-recent, unanimous decision of the U.S. Supreme Court in *Lexmark v. Static Control*, 572 U.S. 118 (2014). The argument was that the *Lexmark* decision changed the pleading requirements for standing to seek remedies under the Lanham Act, and that *Lexmark* should be applied to SFM LLC's pleading in the Cancellation Action.

12. After SFM LLC interposed a First Amended Petition, the motion to dismiss was re-filed on behalf of Corcamore.

13. The TTAB denied the re-filed motion to dismiss, but just before that issued, the U.S. District Court for the Eastern District of Virginia (in another case) ruled that the *Lexmark* decision did apply to how standing must be pleaded in §1064 cancellation actions before the TTAB.

14. A motion for reconsideration, based on the then-recent ruling from the U.S. District Court for the Eastern District of Virginia was filed on behalf of Corcamore. That motion was denied in the Cancellation Action by the administrative judges of the TTAB.

15. After that motion for reconsideration was denied, the party in that Eastern District of Virginia court case appealed to the U.S. Court of Appeals for the Fourth Circuit. The TTAB stayed the Cancellation Action against Corcamore pending a ruling from the Fourth Circuit.

16. The U.S. Court of Appeals for the Fourth Circuit ruled that the Supreme Court's *Lexmark* decision applied to how a party must be plead its standing in §1064 Lanham Act cancellation actions before the TTAB.

17. Another motion for reconsideration, based on the ruling from the U.S. Court of Appeals for the Fourth Circuit, was filed on behalf of Corcamore in the Cancellation Action.

18. Corcamore's motion for reconsideration was denied. The administrative judges stated that the TTAB, an Article I administrative Board "need not consider a decision by a [U.S.] district court or that district court's primary reviewing court [*i.e.,* the U.S. Court of Appeals for the Fourth Circuit] which may appear to apply or analogize from *Lexmark Int'l* [decision of the U.S. Supreme Court] a standard for pleading standing in a Board proceeding."

19. After denying the initial motion of Corcamore challenging "statutory standing" based on the Supreme Court's *Lexmark Int'l* decision, then denying the first reconsideration motion based on the U.S. District Court ruling, and denying the second reconsideration motion based on the U.S. Court of Appeals ruling in *Belmora v. Bayer*,[1] the TTAB invoked "inherent

---

[1] *Belmora LLC v. Bayer Consumer Care AG*, 84 F.Supp.3d 490, 505 (E.D. Va. 2015), *aff'd in relevant part,* 819 F.3d 697, 714 (4th Cir. 2016), *subs. hist. omitted.*

4

authority" to impose a sanction for the filing of an "inordinate number" of motions on behalf of Corcamore in the Cancellation Action.

20. The Cancellation Action concluded on December 21, 2018 with a written order "issued" by the administrative judges of the TTAB, and plaintiff (here) was notified via email.



**Defamatory Comments of the Defendants.**

21. On or after December 21, 2018, non-party John Welch published a blog post about the final order in the Cancellation Action.

5

22. Non-party Welch routinely posts to his online blog about recent rulings from the Trademark Trial and Appeal Board of the United States Patent and Trademark Office (the "TTAB"). (See, *e.g.*, Exhibit A, hereto).

23. Non-party Welch regularly posts to his online blog about TTAB matters, and those blog posts are aimed at a nationwide audience and are publicly available in Kentucky and readily accessible to residents of Kentucky.

24. The online blog of non-party Welch allows others to publish their own comments, which appear online below Welch's blog post.

25. The online blog posts of non-party Welch are accessible to anyone, anywhere with an internet connection.

26. Upon information and belief, the online blog of Welch is accessible to all persons with internet through the separate social media accounts of Welch. Upon information and belief, the online blog of Welch originates from his office in Massachusetts.

27. On or after December 21, 2018, each defendant published their comments on the blog post of Welch, which comments were defamatory, were directed at plaintiff, and that defendants published online knowing those would be accessible on the world wide web, including in Kentucky, and that damaged the reputation of the plaintiff.

28. On or about December 21, 2018, defendant Joseph Dreitler published a comment to non-party Welch's blog post in which Welch summarized the final order in the Cancellation Action. See, Exhibit B, herewith.

29. The comments defendant Joseph Dreitler published to non-party Welch's blog post were defamatory and directed at the plaintiff, and were defamatory *per se* under Kentucky law.

30. Defendant Joseph Dreitler's comments were published so as to be accessible via the internet, and readable by the general public, by persons in Kentucky and by persons in the legal profession, by counsel and other by persons interested in intellectual property law, and by persons who know the plaintiff.

31. Defendant Joseph Dreitler's comments defamed plaintiff, in particular, plaintiff's professionalism, legal ability, as well as his standing as a full-time faculty member teaching at the College of Law of The Ohio State University.

32. Defendant Joseph Dreitler's comments stated or indicated that plaintiff was unfit for his job and duties as a law professor.

33. Dreitler never has spoken to plaintiff, and defendant Joseph Dreitler never has had any professional or personal contact with plaintiff.

34. Prior to the publication of the defamatory comments that Defendant Dreitler directed at the plaintiff, the plaintiff never had known and never had heard of defendant Dreitler.

35. On or about December 21, 2018, defendant Paul Reidl published a comment to the blog post in which non-party Welch summarized the final order in the Cancellation Action. See, Exhibit B, herewith.

36. By adding his comment, Defendant Paul Reidl re-published or re-posted defendant Dreitler's comments. Defendant Reidl commented "I agree" and in addition to adopting defendant Joseph Dreitler's comment, Reidl added his further comments.

37. The comments defendant Paul Reidl published to non-party Welch's blog post were defamatory and directed at the plaintiff, and were defamatory *per se* under Kentucky law.

38. Defendant Reidl's comment was published so as to be accessible via the internet, and was and is now readable by the general public, by persons in Kentucky and by persons in the legal profession, by counsel and other persons interested in intellectual property law, and by persons who know the plaintiff.

39. Defendant's comments stated or indicated that plaintiff was unfit for his job and duties as a law professor, and separately as an IP litigation attorney.

40. Defendant Reidl never has spoken to plaintiff, and Reidl never has had any professional or personal contact with plaintiff, and prior to the publication of his defamatory comments directed at the plaintiff, the plaintiff never had known and never had heard of defendant Reidl.

41. On or about December 21, 2018, defendant Jenifer deWolf published a comment to non-party Welch's blog post in which Welch had summarized the final order in the Cancellation Action.  See, Exhibit B, herewith.

42. By adding her comment, defendant Jenifer deWolf re-published or re-posted defendant Dreitler's comments and defendant Reidl's comments.

43. Defendant deWolf's comment assented to or did not imply disagreement with the comments of Dreitler and Reidl.

44. In addition, defendant deWolf further commented, referencing and hyperlinking to a federal district court case unrelated to the Cancellation Action (hereinafter the "Lehrer" case).

45. Defendant deWolf's comment omitted mentioning that a later decision of the U.S. Court of Appeals for the Third Circuit abrogated the Lehrer case.

46. The comments defendant deWolf published to non-party Welch's blog post were defamatory and directed at the plaintiff.

47. The comments defendant deWolf published to non-party Welch's blog post were directed at the plaintiff and were defamatory *per se* under Kentucky law.

48. Defendant deWolf's comment was published so as to be accessible to the general public, via the internet, and deWolf's comment was and is readable by persons in Kentucky and by persons in the legal profession, by counsel and other persons interested in intellectual property law, and by persons who know the plaintiff.

49. Defendant deWolf's comments stated or indicated that plaintiff was unfit for his job and duties as a law professor, and separately as an IP and complex civil litigation attorney.

50. Defendant deWolf never has spoken to plaintiff. Defendant deWolf never has had any professional or personal contact with plaintiff. Prior to the publication of her defamatory comments directed at the plaintiff, the plaintiff never had known and never had heard of defendant deWolf.

51. The defendants' comments concerned the activities of a resident of Kentucky, and the resulting harm and injury to plaintiff and his reputation were suffered in Kentucky where he resides and works.

52. Plaintiff's cause of action arises from the defendants' comments which they knew were published and were accessible online, and are accessible to anyone in Kentucky with internet access.

9

53. Upon information and belief, the defendants have purposeful and systematic contacts with persons in this forum and persons known to plaintiff, through the defendants' online listings, such as Linkedin.com (examples at Exhibit D, herewith), social media postings, and their online commentary posts.

54. Upon information and belief, the posts and comments from non-party Welch's blog automatically are presented on Westlaw and/or Lexis when certain administrative case law search terms are used.

55. The comments that defendants published on non-party Welch's blog were defamatory, were directed at plaintiff, and were damaging to the reputation of the plaintiff, and caused loss of income and emotional distress, and defendants' comments were published with reckless disregard as to the falsity of the content.

ELEMENTS OF PLAINTIFF'S REPUTATION PRIOR TO DEFENDANTS' COMMENTS.

56. Prior to the date/s on which defendants each published their defamatory, online comments, the reputation of the plaintiff was grounded on at least the following:

(a) Full-time appointment as a member of the faculty at the Moritz College of Law of The Ohio State University. Appointed at the "Assistant" professor rank, then promoted to the rank of "Associate" professor.

(b) Rated AV-Preeminent for over thirty years by Martindale-Hubbell based on judges and peer attorney reviews.

(c) Awarded, based on competitive submissions, a Fulbright Research Scholar grant to study angel investor decision-making processes in the EU, and to be a Visiting Professor

10

at the Entrepreneurial School of the Management Center Innsbruck, Austria. See, Exhibit G, herewith.

(d) Finalist, based on competitive submissions, for appointment as the Fulbright-Hall Distinguished Chair in Entrepreneurship at the Vienna University of Business and Economics.

(e) Admitted, based on bar exam, as a registered U.S. Patent Attorney. Named as counsel of record on numerous issued U.S. patents.

(f) Admitted to practice before the U.S. Supreme Court. Admitted to practice before the U.S. Courts of Appeal for the Second, Third, Fourth, Sixth, Seventh and Federal Circuits. Admitted to practice before six U.S. District Courts. In good standing in all of these federal courts.

(g) Admitted to practice in and in good standing with the courts of the Commonwealth of Kentucky, the State of New Jersey (now inactive), and the State of Ohio (now inactive).

(h) Formerly adjunct professor of law at the College of Law of the University of Kentucky. Taught Intellectual Property Transactions course, and Patent Law Fundamentals course.

(i) Founder, then Managing Partner of Thomason, Moser & Patterson, an IP boutique law firm with offices in New Jersey, Louisville, Houston and San Jose.

(j) Partner, Wilson Elser Moskowitz Edelman & Dicker, NYC-based litigation firm.

(k) Law clerk to Chief Judge of the U.S. District Court for the Eastern District of Kentucky, Hon, B.T. Moynahan, Jr.

11

(l) Veteran of U.S. Marine Corps, honorably discharged as Sergeant (E-5).

## Count I – Defamation.

57. Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

58. Defendants published comments that were false and that defamed the plaintiff in his profession, and to his peers, as well as to the general public, and damaged his reputation.

59. Defendants published their defamatory comments on publicly-accessible online web sites, knowingly and recklessly, and with awareness of the likelihood of causing injury, embarrassment, as well as special and noneconomic damages to plaintiff.

60. Defendants published their defamatory comments on publicly-accessible, online web sites, and knew or should have known that the website would publish and make each of defendant's comments available in Kentucky.

61. Defendants knew or they should have known that the defamatory comments they published about the plaintiff were words that a reasonable reader would attribute a defamatory meaning.

62. Construed as a whole, the defendants' comments tend to bring plaintiff into contempt, public disgrace or ridicule, or to induce an evil opinion of plaintiff in the minds of right-thinking people, and to cause plaintiff to be shunned or avoided, and to injure plaintiff in his business, profession or occupation.

63. The defendants' comments include false assertions about the plaintiff "teaching at the Ohio State law school," false reference to attorney-client privileged communications about

"TTAB procedure" and false assertions about the client not "being advised" but un-advised and so knowing "nothing" about such procedures, malicious comments that plaintiff is a "lawyer who thinks" adjudicative procedures are "a game," and is a "jerk," and that the plaintiff is "unprofessional" even though that word never appears in the Cancellation decision referenced in non-party Welch's blog post. Also, each defendants' comments imply or give the impression that they have knowledge of other false and defamatory facts, on which they relied when writing the comments they published on non-party Welch's blog.

64. Defendant Dreitler's comments about plaintiff's employment relationship, teaching and academic rank "as a faculty member of The Ohio State University College of Law" were malicious, intentionally injurious, or made with reckless disregard of the damaging effect.

65. Defendant Dreitler's comments about plaintiff's employment relationship, teaching and academic rank "as a faculty member of The Ohio State University College of Law" were malicious, intentionally injurious, or made with reckless disregard of the damaging effect, especially because defendant Dreitler is known to and has represented The Ohio State University in intellectual property law and civil litigation matters, and so, Dreitler's comments were especially damaging and impugned plaintiff's competence, capacity, or fitness in the performance of his professional and academic pursuits in the minds of persons who know or are acquainted with plaintiff.

66. Any facts in defendant Dreitler's comments, even if substantially true, were published by defendant so as to provoke a substantially false and defamatory impression by omitting material facts or by Dreitler juxtaposing facts or falsehoods in a misleading way.

67. Defendant Reidl's comments about plaintiff's relationship with his client in the Cancellation Action, and how plaintiff "advised" his client in the Cancellation Action were

13

malicious, intentionally injurious, or made with reckless disregard of the fact that Reidl had no information about the actual attorney-client privileged communications and Reidl had no information as to what the plaintiff's (here) client "knew" or was "advised," and for those and other reasons, Reidl's comments are verifiably false and defamatory, and imply Reidl had facts about what that client was "advised" or about actual attorney-client privileged communications, which comments are baseless and provable as false.

68. Defendant Reidl's comments in 2018 that state or imply plaintiff is unfit as an IP or trademark litigation attorney were malicious.

69. Defendant Reidl published comments directed at plaintiff in 2018, knowing that he, Reidl, had been sanctioned in 2018 by a federal district court in a trademark case in which the district judge made findings that "Reidl recklessly raised a frivolous argument," that he "violated Rule 11(b)(3) by making factual contentions without any evidentiary support," that "Reidl was on notice that he could no longer repeat those lies to the Court. But he nevertheless repeated the lies in a renewed motion," and the district court imposed "sanctions against Reidl for violating Rule 11(b)(3) and 28 U.S.C. § 1927," but that judge found "no basis to award sanctions against local counsel" who assisted defendant Reidl. Further information about defendant Reidl is at Exhibit C herewith.

70. Any facts in the comments defendant Reidl directed at plaintiff, even if substantially true, were published by defendant such as to create a substantially false and defamatory impression by omitting material facts or by juxtaposing facts in a misleading way.

71. Defendant deWolf's comments that plaintiff "being called out for unprofessional conduct before" and hyperlinking to the Lehrer's case were malicious or made with reckless disregard of the fact that deWolf lacked information about the Lehrer case, and made no effort to

14

verify the complete and accurate facts. Any facts in the comments defendant that defendant deWolf directed at plaintiff, even if substantially true, were published by defendant such as to create a substantially false and defamatory impression by omitting material facts or by juxtaposing facts in a misleading way, including that the issue in the Lehrer case was whether or not the common-law "Privilege to Publish Injurious Falsehoods" (a/k/a the 'litigation privilege') barred the counterclaims pleaded against Lehrer, and the fact that the Lehrer case was part of a patent infringement case in which Lehrer made claims against plaintiff (here) and the fact that plaintiff (here) was represented there by a law firm appointed by Lloyds of London (see below), and the fact that the decision in the Lehrer case that deWolf cited in her comments was "abrogated" later by the U.S. Court of Appeals for the Third Circuit.

72. By their comments, each defendant assented to and in effect adopted the comments of the other defendants, which each defendant published and posted under non-party Welch's blog post that summarized the final order in the Cancellation Action.

73. Each defendant is liable for republishing the defamatory comments of each other defendant.

74. Defendants' published comments are widely accessible from internet search engines. See, Exhibit E, herewith.

75. Defendants comments were republished on websites devoted to intellectual property issues, such as the site of the Los Angeles Intellectual Property Law Association. See, Exhibit F, herewith.

76. In 2019, plaintiff was made aware that Visiting Professor positions were sought for the Startup and Small Business and the Intellectual Property, Arts and Technology clinical

15

programs at the top-25 law school outside Kentucky. Plaintiff met or exceeded the requirements for Visiting Professor position, which included:

> "at least 7-10 years of legal practice and/or teaching experience in the relevant practice area. They must hold a J.D. degree or equivalent from an accredited institution and be a member of a state bar. In addition, they must have demonstrated potential for excellence in clinical teaching."

77. As a professor, plaintiff developed, launched, and taught a law school clinic for "Startup and Small" businesses, and a "relevant practice" aspect of that clinical program was intellectual property. See, sample Syllabus, at Exhibit H, herewith.

78. Plaintiff was qualified for the open Visiting Professor positions (including what is described in paragraph 76).

79. Plaintiff applied for the Visiting Professor positions in January 2019. From among all of the applications submitted, the application of the plaintiff was "forward[ed] … to the appointments committee [law school] for review."

80. It is reasonable to assume that the appointments committee of the law school surveyed, or had surveyed, internet-accessible information about the plaintiff in their "review" of plaintiff's application for the Visiting Professor positions.

81. The defendants' comments about the plaintiff, his teaching, his qualifications, and his professionalism would cause a reasonable reader on the appointments committee to attribute a defamatory meaning thereto, and were tend to impugn plaintiff in the minds of the appointments committee, and to injure plaintiff his efforts to obtain Visiting Professor positions.

82. The comments that defendants posted about plaintiff on the blog of non-party Welch were accessible to members of the appointments committee and other law school faculty.

16

83. Plaintiff was passed over for the Visiting Professor positions, and the opportunity for income therefrom was lost.

84. Defendants widely published their defamatory and false comments to and through publically-accessible websites knowing that the natural and probable consequence would be to bring plaintiff into public scorn, contempt, disgrace or ridicule; cause him to be shunned or avoided; and/or, injure him in Kentucky in respect to his business. profession or occupation.

85. Defendants' tortious activity was done without due care and proximately caused reputational and economic damage to Plaintiff, all of which was suffered by Plaintiff who was then and is now a resident and domiciliary of the Commonwealth of Kentucky.

86. Defendants published their comments intentionally, directed their comments at the plaintiff.

87. Defendants published their comments without privilege and not in good faith.

88. A as a direct and proximate result of the defamatory statements made by the defendants, and published online, the plaintiff has suffered:

a. Injury to his reputation in the community generally and his professional reputation;

b. Mental anguish, emotional distress, humiliation, and non-bodily personal injury;

c. Loss of income from the defamatory statements;

d. Injury to academic standing resulting from the defamatory statements; and

e. Special damages, losses and injuries reasonably certain to be sustained in the future.

WHEREFORE, having pleaded the foregoing, the plaintiff prays for:

A. A judgment of joint and several liability against the defendants and each of them on Count I of the Complaint;

B. Damages for defamation and injury to reputation;

17

  C. Special damages for emotional distress

  D. Costs of suit, experts' expenses, and as appropriate, attorney's fees; and

  E. All other damages, losses, legal, equitable and declaratory relief as deemed just and appropriate by the Court.

### Count II – Defamation per se.

89. Plaintiff restates and incorporates by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

90. The comments that each defendant published to non-party Welch's blog post were directed at the plaintiff, and were defamatory *per se* under Kentucky law.

91. Each defendants' comments, separately and as a whole, "tends so to harm the reputation of [plaintiff] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" and "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people," and falsely and intentionally accuse plaintiff of "unfitness to perform duties of office, or tend to disinherit him, … and tend to injure [plaintiff] in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous per se" under the laws that protect citizens of the Commonwealth of Kentucky from defamation.

WHEREFORE, having pleaded the foregoing, the plaintiff prays for:

  A. A judgment of joint and several liability against the defendants and each of them liability on Count II of the Complaint;

  B. Damages for defamation *per se* in an amount not less than $150,000;

  C. Costs of suit, experts' expenses, and as appropriate, attorney's fees; and

  D. All other legal, equitable and declaratory relief as deemed just and appropriate by the Court.

## JURY DEMAND

Plaintiff requests a jury on all triable issues cognizable under law or equity.

19 DEC 2019                  ~ S ~ /Charles L. Thomason/
Charles L. Thomason, plaintiff
6608 Harrods View Circle
Prospect, KY 40059
Email: Thomason[at]*spatlaw*[dot]*com*
Telep. (502) 349-7227