IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| CHARLES L. THOMASON, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:19-cv-00930 |
| | : | |
| v. | : | Judge: Stivers |
| | : | |
| JOSEPH K. DREITLER, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DEFENDANT JOSEPH K. DREITLER
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Comes the Defendant, Joseph K. Dreitler, by Counsel, and makes a limited appearance, for the sole purpose of contesting personal jurisdiction. Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant moves the Court to dismiss Plaintiff's Amended Complaint against him, on the grounds that he is a resident of Ohio, and has no contacts with the Commonwealth of Kentucky which would support the exercise of personal jurisdiction in Kentucky. In support of this motion, Defendant states as follows.

I.    **Factual Background**

The background facts pertaining to each Defendant are slightly different, due to their location and conduct in three different states. While the Amended Complaint occasionally acknowledges that the Defendants' alleged connections to the Commonwealth of Kentucky are different [Amended Complaint ¶¶ 51-93], Plaintiff also makes several allegations which lump the Defendants together, as if to suggest that a single Court must have jurisdiction over all three Defendants, if it possesses jurisdiction over any one of the Defendants. This is not the case.

1

Defendant Dreitler is an attorney residing in Columbus, Ohio who practiced trademark, copyright and unfair competition law until his last day of work on June 25, 2018. [Dreitler Decl. ¶1,5]. At the time of the events at issue in the Amended Complaint, Plaintiff Charles Thomason is or was an Assistant Professor at the Ohio State University law school in Columbus, Ohio. [Amended Complaint ¶101(a)].

In addition to being a law professor at Ohio State, Plaintiff was counsel of record for the Respondent, Corcamore, LLC, in Trademark Trial and Appeal Board ("TTAB") proceeding 92060308, captioned *SFM, LLC v. Corcamore, LLC* ("Corcamore"). [Dreitler Decl. ¶¶11, 14].

On December 21, 2018, the TTAB issued a final, precedential decision against Plaintiff's client, stating:

> Respondent's conduct has been particularly egregious. Respondent made good on its promise to impose a "procedural Rubicon" in this proceeding with Respondent's campaign of filing frivolous motions, by, inter alia, refusing to meet and confer with counsel for Petitioner regarding Respondent's discovery responses, hanging up on counsel for Petitioner during a meet and confer telephone conference on two separate occasions, outright refusing to "read or open" emails from Petitioner's counsel of record for years, and refusing to work with counsel for Petitioner to reschedule depositions of its Fed. R. Civ. P. 30(b)(6) and 30(b)(1) witnesses. In violation of Patent and Trademark Office Rule 11.402(a), counsel for Respondent also communicated directly with Petitioner about this case, without authorization to do so, knowing that Petitioner was represented by counsel.
>
> Respondent also willfully disobeyed Board orders directing the parties not to file any paper that is not germane to pending motions, and to serve documents on Petitioner via email as opposed to U.S. Mail pursuant to Trademark Rule 2.119, 37 C.F.R. § 2.119.44. Respondent was repeatedly warned that its continued misconduct may result in sanctions, and the lesser sanctions previously imposed have not been effective. In fact, Respondent filed at least six papers without obtaining the required prior Board permission. Respondent considers its bad faith conduct to be "mere technicalities" and, instead of giving reasons for its non-compliance, argues that it did comply with Board procedure and orders, and its motion practice

4825-8315-0531, v. 1

could have been avoided had Petitioner conducted a pre-filing investigation or provided support for its claims. Respondent's conduct indicates that entry of any sanction short of judgment would be futile.

It is obvious from a review of the record that Respondent has been engaging for years in delaying tactics, including the willful disregard of Board orders, taxing Board resources and frustrating Petitioner's prosecution of this case. In view thereof, Petitioner's motion for sanctions in the form of judgment against Respondent also is granted pursuant to the Board's inherent authority to sanction.

129 USPQ2d 1072 (TTAB 2018).

On December 26, 2018, Massachusetts attorney John Welch reported the *Corcamore* decision on his non-commercial blog site, thettablog.blogspot.com. [Dreitler Decl. ¶11]. The blog post was entitled: "Precedential No. 35: TTAB Enters Judgment as a Sanction for Discovery Abuses and Egregious Conduct." In the post, Mr. Welch asked readers to comment on his question, "What about a sanction against counsel?" [Dreitler Decl. ¶ 13].

After reading Welch's blog, Defendant read the published and precedential decision. Defendant then went to the TTAB's website to review the pleadings and determine who represented the party which had judgment entered against it for what the TTAB deemed egregious discovery violations and a "campaign of filing frivolous motions." [Dreitler Decl. ¶14]. Defendant saw on the TTAB website that counsel for the sanctioned party was Charles L. Thomason, the Plaintiff herein. Defendant recognized the address Mr. Thomason listed of record (55 W. 12th Avenue, Columbus, Ohio 43210) to be the address for the Ohio State University ("OSU") College of Law. Defendant conducted a simple Google search, and the results indicated that Plaintiff was an Assistant Professor of Law at the OSU College of Law. [Dreitler Decl. ¶14]. Defendant electronically responded to Mr. Welch, who reviewed Defendant's comments and posted his opinion as follows:

3

> As to your question - "what about a sanction against counsel?". The counsel who got his client sanctioned and case dismissed is identified as a faculty member of The Ohio State University College of Law. If correct, the Board certainly ought to sanction any attorney for such behavior, especially an attorney who is a law school professor at a major institution and who has the ability to influence hundreds of young attorneys he is teaching at Ohio State University law school.

Defendant's comment was not directed at Kentucky attorney Charles L. Thomason; it was directed at <u>any</u> attorney who has his client sanctioned for discovery abuses where the resulting sanction is judgment for the opposing side. [Dreitler Decl. ¶16]. Defendant plainly believed, as stated in the text of his comment, that Plaintiff was connected to the Ohio State University law school in Columbus, Ohio. *Id.* At the time Defendant posted the comment, he had no idea Plaintiff lived in Kentucky, as opposed to Ohio, and his comments were not directed towards the Commonwealth of Kentucky or its residents. *Id.*

Defendant formulated the above opinion <u>in Ohio</u> and electronically submitted his comment from a computer at his Columbus, Ohio residence.,[Dreitler Decl. ¶18]. Mr. Welch approved and posted the comment on his non-commercial blog <u>in Boston, Massachusetts</u>. *Id.* Contrary to the strange suggestion in the Amended Complaint, Defendant did not use a computer or computer network located in the Commonwealth of Kentucky to post his comment.

The apparent basis for Plaintiff's claim that Defendant is amenable to personal jurisdiction in the Commonwealth of Kentucky is that Defendant "advertised and promoted" himself to his social media contacts on Facebook and LinkedIn, and that Defendant should have known his comments might have been able to reach readers in Kentucky. [Amended Complaint, ¶¶ 10, 11].

4825-8315-0531, v. 1

Like millions of people around the world, Defendant has a Facebook account. Defendant's Facebook account is visible only to his personal friends, and his postings are personal in nature. They are not business solicitations. [Dreitler Decl. ¶ 7]. Defendant also has a LinkedIn account, which he has had since LinkedIn began. [Dreitler Decl. ¶8].Contrary to Plaintiff's suggestion, the act of accepting a LinkedIn request does not, of itself, create a meaningful connection between the requesting party and the recipient. *Id.* An email appears in the recipient's mailbox, with a link which leads the recipient to the LinkedIn platform. One additional click of a button allows the requesting party to have the recipient's contact information and to be listed in the recipient's network. *Id.* The locations of any persons who sent Defendant a LinkedIn request or the few to whom he sent a request were most definitely "random" and "fortuitous." No one was contacted because of the country or state in which they resided or were located. *Id.* Defendant never had any interaction with the vast majority of his LinkedIn contacts after the first connection was made.

In the early days of LinkedIn, Defendant accepted requests from almost anyone who sent one. [Dreitler Decl. ¶8]. However, he quickly came to perceive LinkedIn as predominately a forum or bazaar for foreign lawyers and law firms and assorted service providers to solicit business from U.S. lawyers. *Id.* As Defendant had been practicing law for many years and had clients with business outside the U.S., he became inundated with requests from people asking to connect so they could send solicitations for his clients' foreign work. *Id.* As a result, Defendant did not use LinkedIn for many years prior to retiring, other than to communicate with a handful of friends, a handful of times a year. *Id.* Defendant has never posted any commentary, opinion, or article to LinkedIn regarding

Plaintiff herein, and the comment at issue in this litigation was submitted to the TTABlog approximately six months after Defendant retired from the practice of law. [Dreitler Decl. ¶¶5, 8].

Defendant's post related solely to Plaintiff's trial conduct and his being employed as an Assistant Professor at the Ohio State University College of Law. Neither Plaintiff nor the Commonwealth of Kentucky were even referred to in this post by name. As Defendant's conduct had nothing to do with the Commonwealth of Kentucky, Plaintiff's residency in Kentucky, or any activity of Plaintiff or any other citizen occurring in Kentucky, the Court does not have personal jurisdiction over this Defendant.

## STANDARD FOR DISMISSAL UNDER FRCP 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure requires dismissal where the court lacks personal jurisdiction over the defendant. Once a defendant moves for dismissal under FRCP 12(b)(2), the plaintiff bears the burden of establishing a prima facie showing that the Court has personal jurisdiction over the Defendant. *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002). See also *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991). "...[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*. at 1458, citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir. 1974).

A federal court has personal jurisdiction if: (1) the defendant is amenable to service of process pursuant to the forum state's long-arm statute and (2) the exercise of personal jurisdiction would not deny Defendant's right to Due Process. *Bird v. Parsons, 289 F.3d 865* (6th Cir. 2002).

II.     **ARGUMENT**

A.     **DEFENDANT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

A federal court sitting in diversity must apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). This requirement includes the application of the forum state's rules regarding conflicts of law. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). A federal court sitting in diversity may only exercise personal jurisdiction over a non-resident defendant **if the forum state's court system could exercise such jurisdiction**. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997). (Emphasis added).

For a significant time, both the Supreme Court of Kentucky and the United States Court of Appeals for the Sixth Circuit held that KRS 454.210, the Kentucky "long arm statute," extended only to the Constitutional limits of Due Process. *See Wright v. Sullivan Payne Co.,* 839 S.W.2d 250 (Ky. 1992); *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd*, 138 F.3d 624 (6th Cir. 1998). Thus, the Court needed only engage in a Due Process inquiry to determine whether jurisdiction over a non-resident defendant existed. *Id.*

In 2011, the Supreme Court of Kentucky revisited this issue and held that personal jurisdiction over a non-resident in Kentucky could be exercised <u>only</u> in the presence of one of the nine circumstances set forth in KRS 454.210, regardless of whether personal jurisdiction over the non-resident would comport with Due Process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011); *see also Hinners v. Robey,* 336 S.W.3d 891 (Ky. 2011). Thus, if all of the bases for jurisdiction in KRS 454.210 are absent, the

federal court need not reach the Due Process inquiry. In this case, there is no basis for jurisdiction over Joseph Dreitler under KRS 454.210.

### 1.   Jurisdiction over this Non-Resident Defendant is Not Permitted Under Kentucky's Long-Arm Statute

As previously stated, Defendant Joseph Dreitler is a citizen and resident of the state of Ohio, and is therefore a "non-resident" of Kentucky for purposes of the Long-Arm Statute. KRS 454.210(2)(a)(2) provides, in relevant part, that a court may exercise personal jurisdiction over any person who acts directly or through an agent, as to a claim arising from the person's:

1.   Transacting any business in this Commonwealth;

2.   Contracting to supply services or goods in this Commonwealth;

3.   Causing tortious injury by an act or omission in this Commonwealth;

4.   Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth…

KRS 454.210(2)(a)(1)-(4).

The statute further provides that when jurisdiction over a person is based solely upon the long-arm statute, "only a claim arising from acts enumerated in this section may be asserted against him." KRS 454.210(2)(b).

Here, Plaintiff's claims arise out of an alleged comment electronically submitted in Ohio for publication on a Massachusetts blog. Plaintiff erroneously asserts that personal jurisdiction over Defendant is proper under KRS 454.210(2)(a)(3) and (4) "…because the defendants' torts alleged herein occurs wherever the offending material is circulated

8

according to *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984), and defendants directed news, and their offending commentaries about trademark law and practice to persons employed and firms operating in this Commonwealth." [Amended Complaint ¶17]. Plaintiff's suggestion that *Keeton* avoids the 6th Circuit test for personal jurisdiction misstates the law.

In *Fiore v. Southern Poverty Law Center, Inc.*, 2009 U.S. Dist. LEXIS 82455 (E.D. Ky 2009), the Court explained, "…the long-arm statute is the starting point in determining whether personal jurisdiction exists." At *6, citing *Auto Channel v. Speedvision Network*, 995 F. Supp. 761, 762-64 (W.D. Ky. 1997). The Court reiterated that after examining the long-arm statute, the court must perform the three part test of minimum contacts of *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Plaintiff asserts that a comment made on an internet blog confers personal jurisdiction anywhere "…plaintiff resides and works." [Amended Complaint ¶ 18]. In *Fiore*, the Court rejected the argument that all content posted on a website establishes personal jurisdiction, again citing the point in *Auto Channel* that "a passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." At *9, citing *Auto Channel,* 995 F.Supp. at 765.

Plaintiff's interpretation of the applicability of *Keeton* and its ability to confer personal jurisdiction as a result of an internet posting on a 3rd party website, was also rejected by Judge Heyburn in *Oxford Round Table, Inc. v. Mahone*, 2007 U.S. Dist. LEXIS 82915 (W.D. Ky. 2007):

> ORT analogizes the distribution of internet liable to the nationwide publication of a magazine containing liable. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984); *Calder v. Jones*, 465 U.S. 783 (1984). In those instances, the defendant in each case was the actual disseminator

of the alleged liable. Each knew that their publication would reach residents of the jurisdiction state and would reach the plaintiffs in their home state. Here, Defendant merely used the internet and perhaps an internet forum to distribute an alleged liable. Our case is more similar to *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F .Supp. 761 (W.D.Ky.1997) and *Genlyte Thomas Group, LLC v. Lighting World, Inc.*, 2000 WL 33968890 (W.D.Ky.), than the two magazine cases.

[T]he Court finds that ORT has a difficult time making its case. Mahone did not "purposefully avail" itself of acting within Kentucky. Indeed, she acted entirely outside the state. Mahone did perhaps cause a consequence within the state by damaging ORT's business. But, it did so by acting indirectly. The cause of action does not appear to have arisen primarily from activity within the state. Only those Kentuckians accessing the Chronicle's website might claim to fit this category. All in all, it is difficult to say that Mahone's activities have a substantial connection to the state.

At *4-5. Like the Defendant in ORT, Mr. Dreitler was not the disseminator of any content, and has no "substantial connection" to Kentucky. Defendant did not send anything into the internet "stream of commerce." He merely submitted a single comment to an internet forum. When the matter is properly analyzed under Kentucky's long-arm statute and *Southern Machine*, the exercise of personal jurisdiction over this Defendant is inappropriate.

a.   **KRS 454.210(2)(a)(3) Is Not Applicable, as No Act or Omission Occurred in this Commonwealth**

KRS 454.210(2)(a)(3) allows exercise of personal jurisdiction over a non-resident if Plaintiff's claim arises out of the non-resident's "causing tortious injury by <u>an act or omission in this Commonwealth</u>." (Emphasis added). Perhaps in realizing that there is no basis for alleging jurisdiction under KRS 454.210(2)(a)(3), Plaintiff has amended his complaint to state that this Defendant used a computer network in the Commonwealth of Kentucky to distribute offending commentaries. [Amended Complaint ¶19]. All alleged acts by Mr. Dreitler occurred in the state of Ohio, where Mr. Dreitler and his computer are

10

located. The fact that the posting could be viewed in Kentucky does change the fact that it was initiated in Ohio. KRS 454.210(2)(a)(3) is not applicable in this case.

### b. KRS 454.210(2)(a)(4) Does Not Confer Jurisdiction In these Circumstances

KRS 454.210(2)(a)(4) allows exercise of personal jurisdiction over a non-resident if Plaintiff's claim arises out of an act or omission outside the Commonwealth, if the non-resident regularly does or solicits business, or engages in another persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the Commonwealth. But the statute expressly requires that the tortious injury **arise out of** the Defendant's business or revenue contacts within the Commonwealth.

As set forth in detail in his Declaration, Defendant Dreitler retired from the practice of law more than 6 months before the events at issue in this litigation. [Dreitler Decl. ¶ 5]. Before his retirement, Defendant had never had any business in Kentucky, entered into any contracts with persons or firms in Kentucky to supply or receive goods or services, engaged in any telephone solicitation into the Commonwealth, received any fees or money from persons or firms in Kentucky, engaged in any commercial transaction with any person or firm in Kentucky, or practiced law or entered an appearance in any court in Kentucky. [Dreitler Decl. ¶6]. He had never represented a single Kentucky client in his forty year law practice. [Dreitler Decl. ¶4].

Plaintiff suggests that jurisdictional discovery might be taken to explore the nature of Defendant's contacts with former classmates from Chase Law School, from which Defendant graduated in 1979. [Amended Complaint ¶57, Dreitler Decl. ¶4]. After graduation, Defendant returned to Kentucky for a law school event on just one occasion, in the early 1980's. *Id.* Since that time, he has not attended any other alumni or school

functions. *Id.* Because of the specialized nature of his practice in trademark and copyright law, Defendant never networked or contacted former classmates or alumni about any legal or business matters. *Id.* He never obtained legal work from Chase alums in Kentucky, or referred any of his own clients to attorneys in Kentucky. *Id.* In short, Defendant has not engaged in any of the activities required to bring his action in posting a three line comment on a non-commercial Massachusetts-based blog within the scope of KRS 454.210(2)(a)(3) or (4). The argument for jurisdiction under each of these sections must fail as a matter of law.

### 2.   Due Process does not Permit the Exercise of Personal Jurisdiction over Defendant Dreitler

Under *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011) and *Hinners v. Robey,* 336 S.W.3d 891 (Ky. 2011), the failure of Defendant's conduct to fit within any of the provisions of KRS 454.210(a)(2) should end the inquiry into whether the Court may exercise personal jurisdiction. However, even if the Long Arm Statute would permit the exercise of personal jurisdiction over Mr. Dreitler, the tenets of Due Process will not.

The ability of a state court to exercise personal jurisdiction is limited by the Fourteenth Amendment. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Pennoyer v. Neff*, 95 U.S. 714 (1878). Federal courts have long recognized two kinds of personal jurisdiction: "general" or "all purpose" jurisdiction and "specific" or "case-linked" jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011).

A court may assert general jurisdiction over a defendant when the defendant's connections to the state are "so continuous and systematic as to render them essentially at home in the forum State." *Id.* "For an individual, the paradigm forum for the exercise of

general jurisdiction is <u>the individual's domicile</u>; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 929. (Emphasis added). As this Defendant is not a resident of Kentucky and has no contacts with the Commonwealth, it would be inappropriate for the Court to assert general jurisdiction over him.

Specific jurisdiction refers to "jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). In *Walden v. Fiore*, 134 S.Ct. 1115 (2014), the Supreme Court emphasized that for an inquiry into specific jurisdiction, the emphasis is on the <u>defendant's</u> contacts with the forum state:

> The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. Two related aspects of this necessary relationship are relevant in this case. First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties….Second, our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there….**[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him**….These same principles apply when intentional torts are involved…. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.

At 1121-1123, citing *Keeton v. Hustler Magazine, Inc.*, 465 U. S. 770, 775 (1984), (quoting *Shaffer v. Heitner*, 433 U. S. 186, 204 (1977)). (Emphasis added, internal citations omitted).

4825-8315-0531, v. 1

In its examination of whether a court had personal jurisdiction over a non-resident defendant alleged to have committed an intentional tort, the Supreme Court reiterated that the Plaintiff's location in the forum state, without more, could not satisfy the minimum contacts necessary to satisfy Due Process. 134 S.Ct. at 1122. Rather, the Court must evaluate the contacts Defendant himself has created with the forum State.

Here, Defendant Dreitler has not made any contacts in Kentucky. Defendant resides in Columbus, Ohio. [Dreitler Decl. ¶1].  Defendant does not own, rent or lease real property in Kentucky. [Dreitler Decl. ¶6]. Defendant has no assets or bank accounts in the State of Kentucky. [Dreitler Decl. ¶3]. Defendant has no contracts for the delivery of any goods or services in Kentucky, or for the transaction of any other business in Kentucky. [Dreitler Decl. ¶6].  Defendant does not own or operate a website. [Dreitler Decl. ¶5]. Defendant has never met or spoken with Plaintiff and has no knowledge of his alleged residence. [Dreitler Decl. ¶15]. Defendant's posting had no connection with Plaintiff's alleged residence in Kentucky, and indeed did not mention Plaintiff or the Commonwealth of Kentucky by name. The only connection between the forum and this litigation is Plaintiff's alleged residence in Kentucky. As stated in *Walden,* this is not sufficient to allow the exercise of personal jurisdiction over Defendant Dreitler.

The United States Court of Appeals for the Sixth Circuit has established a three-part test to determine whether specific jurisdiction may be exercised over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

4825-8315-0531, v. 1

###### a.    No Purposeful Availment

The Supreme Court has explained the importance of a defendant having purposefully availed himself of the privilege of doing business in a forum state. This ensures that a nonresident defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine*). Purposeful availment is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King* at 475, citing *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957). (Emphasis in original).

Plaintiff does not allege any contacts between Defendant and the Commonwealth of Kentucky, aside from Defendant's posting in Ohio, of a comment about a Kentucky resident, on a 3rd party blog in Massachusetts. Such conduct by Dreitler does not constitute purposeful availment. *See, e.g. Calphalon Corp. v. Rowlette, et al.*, 228 F.3d 718, 722-23 (6th Cir. 2000), citing *International Technologies Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997) (contacts by defendant-seller with forum state were "purely fortuitous" where defendant was not attempting to "exploit any market for its products" in the forum state, but had contact with the state only because the plaintiff chose to reside there).

In *Cadle Co. v. Schlichtmann*, 123 Fed.Appx. 675, 679 (6th Cir. 2005) the Sixth Circuit was faced with a situation in which (unlike the instant action) the Defendant actually <u>did</u> operate his own website, which he created expressly for the purpose of delivering his opinions about the Plaintiff. Nevertheless, the Court stated:

….Schlichtmann's website does not demonstrate purposeful availment in Ohio. The website specifically refers to Cadle's activities in Massachusetts. ….Neither the site, nor any of its listed articles directly discuss Cadle's activities in Ohio.

Just as in *Reynolds,* while the "content" of the publication was about an Ohio resident, it did not concern that resident's Ohio activities. Furthermore, nothing on the website specifically targets or is even directed at Ohio readers, as opposed to the residents of other states.

The *Cadle* Court cautioned that "**[t]he law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state[,]**" before quoting a 5th Circuit decision with facts similar to those of the instant case:

> See *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (finding that Columbia University's maintenance of a website and internet message board, on which one of its professors posted an article that criticized the Texas plaintiff, was insufficient to confer personal jurisdiction in Texas over the university or the professor, because the "article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states").

*Id*. at 679-80. (Emphasis added).

This Court applied similar reasoning in *Fruit of the Loom, Inc. v. En Garde, LLC*, 2017 U.S. Dist. LEXIS 136851; 2017 WL 3671322 (W.D. Ky. 2017), finding no personal jurisdiction where there was no evidence that the non-resident Defendant had "'expressly aimed' its actions at Kentucky or that Kentucky was the 'focal point' of the Defendant En Garde's allegedly wrongful conduct and the resulting harm. At *18-19.

Here, Defendant did not aim his comments at Kentucky or its residents and did not reference or have any idea where Plaintiff resided. [Dreitler Decl. ¶¶15, 16]. Kentucky was not mentioned or even considered by Defendant in his posting.

In a very similar case involving a posting on social media, the Court stated in *Kent v. Hennelly*, 328 F.Supp.3d 791 (W.D. Tenn. 2018), at 798:

4825-8315-0531, v. 1

In the context of defamation actions arising out of internet posts, the majority of federal courts have held that the "mere posting of information or advertisements on an internet website does not confer nationwide personal jurisdiction." See *Remick v. Manfredy*, 238 F.3d 248 (3rd Cir. 2001); *Burdick v. Superior Court*, 233 Ca.App.4th 8, 183 Cal.Rptr.3d 1 (Cal. Ct. App. 2015); *Gorman v. Jacobs*, 597 F.Supp.2d 541 (E.D. Pa. 2009); *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002). These cases require, in addition to intentional conduct causing harm to a forum resident, evidence the nonresident defendant expressly aimed or intentionally targeted his intentional conduct at the forum state. *Burdick v. Superior Court*, 233 Cal.App.4th at 24, 183 Cal.Rptr.3d 1.

### b. No Activities in Kentucky

Under the second element of *Southern Machine*, *supra*, the cause of action must arise from Defendant's activities in the forum. To meet this second prong of the specific jurisdiction test, the alleged cause of action must have a "'substantial connection with the defendant's in-state activities.'" *Bird*, *supra,* 289 F.3d at 875 (quoting *Third Nat'l Bank in Nashville*, 882 F.2d at 1091). Injury to a forum resident, standing alone, is not enough. *Weather Underground, Inc. v. Navigation Catalyst Sys.*, 688 F. Supp. 2d 693, at 700 (E.D. Mich. 2009),(citing *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir.2008)). There must be "something more" to demonstrate the defendant directed his activity toward the forum state. *Id.* (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998)).

There is no substantial connection between Plaintiff's alleged claims and anything that Defendant has done in Kentucky, because Defendant does not engage in *any* activities in Kentucky, and Plaintiff has alleged no activities by Defendant other than the TTAblog posting [Amended Complaint ¶44].  This argument was rejected in *QSR Automations, Inc. v. KRS Corp. LLC*, 2010 WL 1416700 (W.D. Ky. 2010):

> QSR attempts to cobble together the presence of an interactive website on the Internet with the effects it claims to have felt in Kentucky from KRS'

intentional tortious acts. The problem is that there have been no "minimum contacts" with Kentucky so that the exercise of jurisdiction over KRS would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Plaintiff suggests that by posting a single comment on a blog, Defendant has effectively placed his ideas in the internet stream of commerce, where he knows they will ultimately reach Kentucky readers. Plaintiff attempts to satisfy the second element of *Southern Machine* by implying that some of Defendant's Facebook and LinkedIn contacts may reside in Kentucky, and by arguing that it is necessary to explore the extent of Defendant's relationships with other Kentucky attorneys. Notwithstanding the fact that the TTABlog is a non-commercial blog, Plaintiff's argument must still fail as a matter of law. Even if Defendant has 100 LinkedIn connections who live or work in Kentucky, the allegedly improper blog comment did not arise out of any of these supposed contacts. Defendant's actions in posting on a Massachusetts blog do not connect him to Kentucky in any meaningful way. The second element of *Southern Machine* is not met.

### c. Insufficient Contacts to Permit the Reasonable Exercise of Jurisdiction

Finally, under *Southern Machine*, the Defendant's acts or the consequences of his acts "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The Supreme Court has emphasized that for a court to exercise specific jurisdiction which is consistent with constitutional due process, the defendant's "suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277 (2014). Due process requires that the defendant "have certain minimum contacts with . .

. [Kentucky] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The critical question minimum-contacts analysis seeks to answer is whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Defendant has no conduct, connections, or contacts with Kentucky, thus there are no contacts sufficient to establish jurisdiction over Defendant.

When courts determine whether specific jurisdiction is reasonable, they must consider "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief," giving due regard to "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Theunissen*, 935 F.3d at 1461 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).  Some variables the Sixth Circuit has considered in determining whether exercise of jurisdiction would be reasonable are the amount of business the defendant has done with residents of the forum state, whether a different state would have personal jurisdiction over all of the parties, and the burden on the defendant in having to defend a lawsuit in the forum state.  *Bird*, 289 F.3d at 875. Given the utter lack of contacts Defendant has with this forum, and the burden on Mr. Dreitler of having to defend a lawsuit where he does not live or do any business, it would be unreasonable for the Court to exercise specific jurisdiction over Defendant in Kentucky.

III.    **Conclusion**

A Kentucky court would not have jurisdiction over Defendant Dreitler under the Long-Arm statute, as there was no act in Kentucky, and the Defendant conducts no business in the Commonwealth. Moreover, Due Process would not allow the exercise of personal jurisdiction, as Mr. Dreitler did not personally avail himself of the privilege of doing business in Kentucky or being subject to its laws, he has no contacts in Kentucky out of which a claim has arisen, and it would be unreasonable for a court to exercise personal jurisdiction over him in this forum.

WHEREFORE, on the basis of the foregoing, Defendant Joseph K Dreitler respectfully requests this Court to dismiss this matter for lack of personal jurisdiction, pursuant to Fed. R. Civ. Pro. 12(b)(2) and 12(b)(3).

Respectfully Submitted By:

DANIEL E. MURNER       (No. 82715)
dmurner@landrumshouse.com
LACEY FIORELLA         (No. 92006)
lfiorella@landrumshouse.com
LANDRUM & SHOUSE LLP
P.O. Box 951
Lexington, KY 40588-0951
Telephone: (859) 255-2424

BY: s/Daniel E. Murner_____
        COUNSEL FOR DEFENDANT,
        JOSEPH K. DREITLER

4825-8315-0531, v. 1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2020, I electronically filed the foregoing through the

CM/ECF system, which will send a notice of electronic filing to:

Charles L. Thomason
6608 Harrods View Circle
Prospect, KY  40059
*Plaintiff, Pro Se*

I further certify that by agreement of the Defendants, the foregoing has been sent

electronically to:

Paul W. Reidl
reidl@sbcglobal.net

Jenifer deWolf Paine
Jpaine@gmail.com

BY:   s/Daniel E. Murner
COUNSEL FOR DEFENDANT

4825-8315-0531, v. 1