U.S. DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY (Louisville)

| | |
|---|---|
| **Charles L. Thomason,** ‖ | |
|     Plaintiff, ‖ | |
| **v.** ‖ | 3:19-cv-0930-GNS |
| ‖ | |
| **Joseph K. Dreitler,** ‖ | |
| **Paul W. Reidl, and** ‖ | |
| **Jenifer deWolf (Paine),** ‖ | |
|     Defendants. ‖ | |

**PLAINTIFF'S RESPONSE TO POINTS AND AUTHORITIES
IN [*Dkt. ## 34, 36-1 & 37-1*] OF DEFENDANTS.**

Procedural Background.

It was ordered that defendants would "respond to the Amended Complaint" [*Dkt. #32*] no later than 14 days after the Order [*Dkt. #33*] was entered on July 6, 2020. On the 14th day, a motion brief was filed for defendant Dreitler [*Dkt. #34*], and a motion filing was made for defendant Reidl [*Dkt. #36*] that "adopts and incorporates by reference" defendant Dreitler's brief.

After the fourteen-day deadline, a motion brief was received by the Clerk.

Plaintiff responds to the defendants' briefs, asking this Court to consider the following points and authorities and to deny each defendant's motion.

Factual Background.

Each defendant filed a declaration with their motion. In many key respects those declarations leave undisputed, or even unmentioned, allegations in the Amended Complaint that are pertinent to personal jurisdiction. Surprisingly, each declaration proffers inferences plainly ***un***-favorable to the pleaded assertions, which is inconsistent with the rules of law applicable to Rule 12(b)(2) motions decided on the papers and without discovery. On other points, defendants

declare what is contradicted by facts provable by public records and filings, which are set forth in declarations in opposition presented here.

The claims of defamation and defamation *per se*, pleaded in the Amended Complaint, arise from and have a reasonable and direct nexus with the defendants' persistent use of online and electronic communications to publish comments and criticisms about trademark law and practice to persons in Kentucky and to attorneys in firms with offices located in Kentucky.

<u>Response to Caselaw Cited in Defendants' Motion Briefs.</u>

The brief of defendant Dreitler, adopted by defendant Reidl, and the untimely brief of defendant deWolf quote passages from cases that they believe helpful, but they go no further to connect those passages to the facts and claims pleaded here.  Mostly the caselaw quotes in defendants' motion briefs come from decisions that were not defamation cases, were not cases that apply or even involve the "persistent course of conduct" provision of the Kentucky long-arm statute, and are from federal courts in states other than Kentucky.  Defendants quote favorably from caselaw tenets stated in regard to products liability/stream of commerce cases,[1] to *lex loci*

---

[1]    *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997) (applying Michigan long-arm statute which has no "persistent course of conduct" provision; plaintiff "approached the [Oklahoma] defendant ...with an offer to sell," and after delivery "of the goods at a warehouse in Illinois, the defendant refused to pay the full purchase price because of alleged nonconformity with agreed quality standards.").

*contractus* cases where the law of the place where the contract was made was the alleged minimum contact,[2] and even negligent injury cases.[3]

The guiding principles of personal jurisdiction and the law and long-arm statute of Kentucky are known to this Court. The cut-and-splice use of caselaw quotes in defendants' motion briefs can recall one overarching view of our Supreme Court about minimum contacts: "this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court of California In & For City & Cty. of San Francisco*, 436 U.S. 84, 92 (1978).

Plaintiff urges this approach as worthwhile to the determination of personal jurisdiction where online defamation in pleaded. Defendant Dreitler's brief cites a Tennessee decision, *Kent v. Hennelly*, 328 F. Supp. 3d 791, 794 (E.D. Tenn. 2018), appeal dismissed, No. 18-5821, 2019 WL 3731651 (6th Cir. Mar. 19, 2019), which finds no personal jurisdiction but *Kent* cites and distinguishes another online defamation decision where personal jurisdiction attached. *Hibdon v.*

---

[2] *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 720 (6th Cir. 2000) (a 2-1 panel ruling (alleged minimum contact was Rowlette was the exclusive manufacturer's representative for Calphalon in Minnesota, Iowa, North and South Dakota, and Nebraska. Rowlette's one-year manufacturer's representative agreement ...[stated] "this Agreement shall be interpreted under the laws of the State of Ohio.") (dissent, at 729, panel's rulings are "inconsistent with controlling Supreme Court and Sixth Circuit precedent."). *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1088 (6th Cir. 1989)(default due to a "Tax Sharing Agreement" with WEDGE, which was executed in Texas and, by its terms, is subject to Texas law. "The Tennessee long-arm statute provides for personal jurisdiction over nonresidents ... Tenn.Code Ann. § 20–2–214" has no "persistent course of conduct" provision, at 1089). *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 387 (6th Cir. 1997)( applying Michigan long-arm statute, at 392, which unlike Kentucky, has no "persistent course of conduct" provision; alleged misappropriation of the design for a manufacturing plant in France, coordinated pursuant to a letter agreement negotiated in Switzerland with a Swiss company ...[that] contained a provision stating that "[j]urisdiction for this contract is Berne, Switzerland, and it will be interpreted under Swiss law." Panel noted "the Supreme Court's admonition to exercise restraint in extending our notions of personal jurisdiction into the international field").
[3] *Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006)(wrongful death and injuries sustained in Canada, applying Ohio long arm to the "transact business in Ohio" provision, where services consisted of arranging travel to the location of the hunt and providing hunt-related support once the hunters were on site in Canada. ).

*Grabowski*, 195 S.W.3d 48, 54 (Tenn. Ct. App. 2005) (Non-resident individual defendants who posted online comments and allegedly transmitted defamatory communications to readers in Tennessee causing injury to a Tennessee resident, established sufficient minimum contacts with Tennessee so as to subject defendants to the exercise of personal jurisdiction).  Plaintiff here submits that the distinctions indicated between the *Kent* and the *Hibdon* cases, which apply the same legal tenets to assess personal jurisdiction, can serve as a template to assess the personal jurisdiction issues here in an online defamation suit.

In *Kent*, there was "No allegation in the complaint of any connection to Tennessee." 328 F. Supp. 3d at 795-796.  Hennelly published three allegedly defamatory posts, which all regarded proposed rezoning of real property located in South Carolina.  The intended audience of Hennelly's posts was not anyone in Tennessee, but rather the community considering whether to allow rezoning for the Hilton Head National Golf Course located in South Carolina.  Two of Hennelly's posts were on Facebook, but plaintiff *Kent* could not show that Hennelly had any Facebook friends in Tennessee.  By contrast, the allegations here are defamatory posts that targeted plaintiff, who resides in and is a citizen of Kentucky, and who is entitled to the protections of Kentucky law and its Constitution.  The online posts of defendants in the case at bar regard trademark law and practice, and their intended audience included Kentucky-based attorneys and persons who work at firms with offices located in Kentucky.  Here it is alleged, and undisputed, that defendants have affirmatively chosen to make LinkedIn connections with attorneys and persons in Kentucky.  Those differences should lead to the conclusion that, even under *Kent*, the plaintiff here has made a *prima facie* showing of personal jurisdiction.

That conclusion is confirmed by the *Hibdon, supra,* decision that was cited and analyzed in *Kent*.  Plaintiff Hibdon a TV repairman who resided in Tennessee.  He 'souped-up' jet skis,

and his reputation for this work was well-regarded. A magazine, not based in Tennessee but distributed there and elsewhere, called SPLASH, published articles about the performance of jet skis that Hibdon had modified. The quoted parts of the magazine articles do not include a mention of where Hibdon resides. In the case here, that SPLASH magazine compares to the non-party Welch's blog post about the plaintiff's performance in a trademark cancellation proceeding. But, here and in *Hibdon*, there `always are haters.' Comment posts from two residents of Kentucky, Grabowski and Pace, were published on an online news groups *rec.sport.jetski* for jet ski enthusiasts. Those defendants' "remarks were critical of Hibdon's jet ski modifications and questioned the authenticity of the speed Hibdon's modified jet skis had achieved ...[and] criticized Hibdon's skills as a jet ski mechanic, and made negative personal comments about Hibdon." *Supra*, at 54. Those negative "remarks" and criticisms of Hibdon and the questioning of his "skills" compare with the defamatory comments of the defendants here, especially, defendants Dreitler and Reidl. Hibdon sued, and alleged that these remarks were defamatory and negatively affected his jet ski business, and he claimed that the comments resulted in economic loss and caused him emotional distress. The trial court ruling in Hibdon that "specific personal jurisdiction still may be found without violating the due process clause when an actor purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities," was affirmed by the Court of Appeals. "The claims of defamation against Grabowski and Pace arose specifically from injuries arising out of or relating to those Internet messages. Therefore, we hold that the trial court properly exercised personal jurisdiction over Defendants Grabowski and Pace." *Supra*, at 71.

    The distinctions between the contacts (alleged and not) in the *Kent* case, and those in the *Hibdon* case, especially online communications to recipients into the forum about the matter

causing injury, provide a useful template to decide here that plaintiff has made a prima facie showing of minimum contacts and a persistent course of conduct,[4] adequate for this Court to conclude it has personal jurisdiction over the defendants.

<u>Due Process under Kentucky Long-Arm Statute.</u>    The motion briefs of defendants press a wide range of due process contentions, again using select quotations from cases not involving defamation or a persistent course of conduct.

It is plaintiff's contention that the due process standard under Kentucky law is cabined under section 2(b) of the long-arm statute. That subsection 2(b) of the Kentucky long-arm statute is a "critical limitation" that focuses the due process inquiry set out in caselaw from states with a long-arm statute that does <u>not</u> have that limitation, and are viewed as applicable as broad as due process allows. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). In *Caesars*, the Supreme Court did "not disagree with the Court of Appeals's conclusion that Appellants' activities constitute substantial contacts with Kentucky that surpass the minimum due process requirements." The Court supplanted the broad-based analysis of due process, such that the "second step" of the personal jurisdiction assessment is whether or not the limitation in section 2(b) of the long-arm statute is met. For that reason, many contentions in the motion briefs of defendants should not apply. Instead, this Court should determine whether the Amended Complaint pleaded a "claim arising from acts enumerated in" the long-arm statute such as a persistent course of conduct involving online communications and contacts with

---

[4] The Kentucky Supreme Court ruled that the nine "provisions [of KRS 454.210, which include "persistent course of conduct"] should be liberally construed in favor of long-arm jurisdiction." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 55 (Ky. 2011).

attorneys and persons in Kentucky about trademark law and practice, such that the claim "may be asserted against" these defendants.

     In conclusion, the plaintiff respectfully requests that this Court should determine there is personal jurisdiction, after evaluating the well-pled allegations against each defendant, taking into account all inferences favorable to those allegations and to the factual matters set out in plaintiff's declaration and exhibits, and applying commonsense rules as in the Kent and Hibdon decisions.

Dated:  10 AUG 2020

                                            *s/Charles L. Thomason/*
                                            Charles L. Thomason

                                            Plaintiff

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Opposition to defendants' briefs was filed with the Clerk of Court using the CM-ECF system of the Court, which shall transmit an electronic copy to all parties who have appeared, and that a true and complete copy of the papers also were served to the *pro se* defendant via the address (below) indicated on the docket sheet of the Court:

Date:  10 AUG 2020

        Defendant Jenifer deWolf Paine

        99 E. 4th Street  #2D
        New York City, NY 10003

        By:  *s/Charles L. Thomason/*
        Charles L. Thomason